424 So.2d 52 (1982)
Willie F. VAUSE, Appellant,
v.
STATE of Florida, Appellee.
No. AB-460.
District Court of Appeal of Florida, First District.
December 8, 1982.
Rehearing Denied January 12, 1983.
*53 Philip J. Padovano and M. Howard Williams, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
Defendant appeals from convictions and sentences for third degree murder, shooting into an occupied vehicle, and using a firearm in the commission of a felony.
His points on appeal are:
I. Did the trial court err in allowing a radiologist to render an opinion as to the manner in which the fatal bullet became fragmented?
II. Did the trial court err in refusing to allow defense counsel to cross-examine a State witness about the specific nature of his prior criminal convictions?
III. Was the evidence sufficient to sustain a conviction for any crime greater than manslaughter?
IV. Was the defendant properly convicted of both murder in the third degree and the underlying felony of shooting into an occupied vehicle?
V. Should the judgment and sentence for using a firearm in the commission of a felony be vacated because that offense is necessarily included in the offense of shooting into an occupied vehicle?
VI. Did the trial judge err in applying the three-year mandatory minimum sentencing provisions of section 775.087?
We affirm in part and reverse in part.
On June 27, 1979, defendant was indicted for the first-degree murder, by premeditated design, of Randall Mayo and also charged with shooting into the vehicle occupied by Mayo and using a firearm in the commission of Mayo's murder. Defendant pled not guilty, contending Mayo died as the result of an accident, and his jury trial began on January 21, 1981.
On June 13, 1979, the defendant and about 20 other people were at Williams Landing drinking beer and listening to Mayo play the guitar. The defendant subsequently got into a fight with Buddy Rowan over defendant's refusal to move his car which was blocking Rowan's truck. Tommy Harrell broke up the fight and took defendant to his car. Horace Richardson asked the defendant to leave and the defendant said he was going to get his gun and come back and kill Rowan. Because he thought the defendant too drunk to drive, Richardson drove the defendant home in the defendant's car. They were followed by Tommy Harrell, his son, and his wife in their truck, and Johnny Pittman and Mayo in Pittman's car. On the way home, defendant told Richardson he was going to get a gun and kill all the people at Williams Landing.
While Richardson was helping the defendant into his house, Mayo got out of Pittman's car and into Harrell's truck. When Richardson came out, he got into Pittman's car. As the truck and car were leaving the defendant's driveway, the defendant *54 came out of the house and yelled, "I'll beat all of you back down there and I'll blow everybody's brains out that's sitting on the porch down there." The defendant then fired a rifle, the first shot striking the road between the two departing vehicles, the second shot striking Mayo who was in Harrell's truck, and the third shot "singing through the trees." Mayo subsequently died at the hospital of the gunshot wound.
At trial, over defendant's objection, the trial court allowed Dr. Beeckler, a radiologist, to testify that it was his opinion, based upon the autopsy X-rays, that the bullet entered Mayo's body intact. The defense was contending that the fatal bullet (as well as the other two shots) was not fired at the departing vehicles but was instead deflected from a dogwood tree, striking Mayo in an already fragmented state.
During the State's cross-examination of Harrell, he testified he had previously been convicted of two crimes. On cross-examination, the defendant attempted to inquire into the specific nature of those convictions but the trial court sustained the State's objection to such inquiry.
At the close of the State's evidence and again at the close of all evidence, defendant moved for judgments of acquittal which were denied by the trial court. The jury returned a verdict finding the defendant guilty of third degree murder, shooting into an occupied vehicle, and use of a firearm in the commission of a felony. The trial court sentenced defendant to twelve years in prison for third degree murder, twelve years for shooting into an occupied vehicle, and five years for use of a firearm in the commission of a felony, such sentences to run concurrently. The trial court also imposed a three-year firearm mandatory sentence under section 775.087.
We affirm Point I. The trial court did not abuse the broad discretion it has in determining the range of subjects on which expert witnesses may be allowed to testify. Johnson v. State, 393 So.2d 1069 (Fla. 1980). Defendant must make a clear showing of error and has not done so. Dr. Beeckler's opinion testimony is not outside his special knowledge and expertise. Radiology is a medical specialty in which the physician concentrates on the performance and interpretation of X-ray examination. He has previously been qualified as an expert in radiology in a court of law and has given expert testimony. Moreover, he has interpreted X-rays involving gunshot wounds "hundreds of times." His opinion that the fatal bullet entered the victim's body intact and then later fragmented upon impact with the ribs is within reasonable medical certainty and was based upon his interpretation of the autopsy X-rays which were admitted into evidence. Contrary to defendant's argument, a ballistics expert is not qualified to interpret X-rays.
Point II is also affirmed. The trial court did not err in refusing to allow the defendant to cross-examine State witness about the specific nature of his two prior criminal convictions. Leonard v. State, 386 So.2d 51 (Fla. 2d DCA 1980); Sneed v. State, 397 So.2d 931 (Fla. 5th DCA 1981).
It has long been the law of this State that an attack upon the credibility of a witness by means of "other crimes" evidence is limited to the question whether the witness has been convicted of a crime. If the conviction is admitted, the inquiry may not be pursued to the point of naming the crime of which he was convicted. Nelson v. State, 395 So.2d 176, 178 (Fla. 1st DCA 1981).
Defendant's reliance upon McCrae v. State, 395 So.2d 1145 (Fla. 1981) and Nelson, supra, in urging reversal is misplaced. Both McCrae, supra, and Nelson, supra, acknowledge the general rule that the specific nature of the prior conviction of a witness should not be brought out on cross-examination if the conviction was admitted. However, in these two cases, the courts found that it was proper to allow further inquiries into the specific nature of the prior conviction on cross-examination because the defense counsels, through their questions on direct examination, either tactfully attempted to mislead the jury into believing the prior convictions were inconsequential *55 or elicited self-serving declarations regarding the prior convictions. In other words, the "door was opened" for further inquiry on cross-examination as to the type of prior convictions because the direct testimony went beyond the number of prior convictions. In the present case, the direct testimony was limited to the number of convictions which were admitted.
We also affirm Point III. There is sufficient evidence to sustain defendant's conviction of third degree murder under section 782.04(4), Florida Statutes (1979):
The unlawful killing of a human being, when perpetrated without any design to effect death, by a person engaged in the perpetration of, or in the attempt to perpetrate, any felony other than any arson, sexual battery, robbery, burglary, kidnapping, aircraft piracy, or unlawful throwing, placing, or discharging of a destructive device or bomb, shall be murder in the third degree... .
Shooting into an occupied vehicle (of which the defendant was also convicted) is a felony. § 790.19, Florida Statutes (1979).
The facts could have justified a verdict of at least second degree murder under section 782.04(2), Florida Statutes (1979)  unlawful killing perpetrated by an act imminently dangerous to another and evidencing a depraved mind regardless of human life. Thus, the verdict of third degree murder is also warranted under the combination of mandatory-lesser-included-offense and jury pardon doctrines. Killen v. State, 92 So.2d 825 (Fla. 1957); Damon v. State, 397 So.2d 1224 (Fla. 3d DCA 1981).
Although we affirm Point IV as to defendant's conviction of shooting into an occupied vehicle, we reverse the defendant's twelve year sentence for this crime. Shooting into an occupied vehicle is an element of the third degree murder conviction under section 782.04(4), Florida Statutes (1979). In State v. Hegstrom, 401 So.2d 1343 (Fla. 1981), the supreme court held that section 775.021(4) (which provides:
(4) Whoever, in the course of one criminal transaction or episode, commits an act or acts constituting a violation of two or more criminal statutes, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense, excluding lesser included offenses, committed during said criminal episode, and the sentencing judge may order the sentences to be served concurrently or consecutively.)
only prohibits multiple sentences, not multiple convictions.
We affirm Point V as to defendant's conviction for using a firearm in the commission of a felony. However, we reverse defendant's five year sentence for using a firearm in the commission of a felony because that offense was necessarily included in the offense of shooting into an occupied vehicle (which was, in turn, necessarily included in the offense of third degree murder). Hegstrom, supra; section 775.021(4), supra.
We affirm Point VI. Appellant contends that the trial court erred in applying the three year mandatory minimum sentence for use of a firearm under section 775.087, Florida Statutes (1979). He maintains that the use of the weapon was necessary to prove the crime itself and cannot be considered as a separate facet of the offense sufficient to justify an aggravated penalty. Section 775.087, Florida Statutes (1979), provides:
(1) Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as follows:
(a) In the case of a felony of the first degree, to a life felony.
(b) In the case of a felony of the second degree, to a felony of the first degree.

*56 (c) In the case of a felony of the third degree, to a felony of the second degree.
(2) Any person who is convicted of:
(a) Any murder, sexual battery, robbery, burglary, arson, aggravated assault, aggravated battery, kidnapping, escape, breaking and entering with intent to commit a felony, or aircraft piracy, or any attempt to commit the aforementioned crimes; or
(b) Any battery upon a law enforcement officer or firefighter while the officer or firefighter is engaged in the lawful performance of his duties and who had in his possession a "firearm," as defined in s. 790.001(6), or "destructive device," as defined in s. 790.001(4), shall be sentenced to a minimum term of imprisonment of 3 calendar years. Notwithstanding the provisions of s. 948.01, adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall the defendant be eligible for parole or statutory gain-time under s. 944.27 or s. 944.29, prior to serving such minimum sentence.
In Blanton v. State, 388 So.2d 1271 (Fla. 4th DCA 1980), rev. denied, 399 So.2d 1140 (Fla. 1981), that court pointed out that the two subsections of 775.087 serve two different functions. Subsection (1) provides for reclassification of a felony to a higher degree where a weapon or firearm is used and the use of the weapon had not already resulted in the offense being upgraded to a higher degree. Subsection (2) does not increase the punishment but provides for mandatory minimum imprisonment for a person who has been convicted of certain crimes while possessing a firearm.
Defendant Vause was given a mandatory minimum sentence under section 775.087(2), Fla. Stat. (1979). Defendant's third degree murder conviction with use of a firearm authorized the three year mandatory minimum sentence. Blanton v. State, supra; See also Crook v. State, 385 So.2d 1136 (Fla. 1st DCA 1980), in which this court held that a conviction of attempted burglary with a firearm required the trial court to impose a three year mandatory minimum sentence notwithstanding that the firearm was an element of the committed offense. The distinction between subsections (1) and (2) of section 775.087 was not argued in the case of Skipper v. State, 400 So.2d 797 (Fla. 1st DCA 1981), rev'd. on other grounds, 420 So.2d 877 (Fla. 1982). To the extent that Skipper is inconsistent with Blanton and this opinion, we hereby recede from Skipper.
Appellant Vause has cited Webb v. State, 410 So.2d 944, 945 (Fla. 1st DCA, 1982), for support, but Webb relates to section 775.087(1) rather than section 775.087(2) of the Florida Statutes.
AFFIRMED in part and REVERSED and REMANDED in part.
ERVIN and WENTWORTH, JJ., concur.